ELI DAVIDSON AND LILLIAN DAVIDSON, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8766–77.    Filed March 8, 1984.

*John E. O'Brien,* for the petitioners.
*Evelyn B. Brennan,* for the respondent.

CHABOT, *Judge*: Respondent determined deficiencies in Federal individual income tax against petitioners for 1973 and 1974, in the amounts of $5,628.83 and $3,465, respectively. After a concession by petitioners, the issues for decision[1] are as follows:

(1) Whether petitioners' boat was used primarily for the furtherance of petitioner-husband's trade or business, within the meaning of section 274(a).[2]

---

[1] The medical expense adjustments in the notice of deficiency are derivative and depend on our resolution of the issues in dispute.

[2] Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the years in issue.

(2) If so, whether petitioners' use of their boat was directly related to the active conduct of petitioner-husband's trade or business.

(3) If so, whether petitioners have met the substantiation requirements of section 274(d).

(4) If so, to what extent (a) deductions are allowable under sections 162(a) and 167, and (b) a credit is allowable under section 38.

## FINDINGS OF FACT

Some of the facts have been stipulated; the stipulation and stipulated exhibits are incorporated herein by this reference.

When the petition in the instant case was filed, Eli Davidson (hereinafter sometimes referred to as Eli) and Lillian Davidson (hereinafter sometimes referred to as Lillian), husband and wife, resided. in Liberty, Tex.

During the years in issue, Eli was a doctor with a general medicine practice in Liberty, Tex.; he also was on the staff of the Kersting Memorial Hospital in Liberty. Eli was chief of this hospital's staff from time to time.

Eli had been interested in boating for quite some time. The first boat Eli had was a small, aluminum Lone Star boat. In April 1964, Eli acquired a 28-foot Chris Craft boat at a cost of $8,571.38. This boat was called the Jezebel II. Sometime after January 21, 1973, Eli sold the Jezebel II.

In March 1973, Eli acquired a 40-foot Concorde boat at a cost of $35,750. This boat was called the Jezebel III (hereinafter sometimes referred to as the boat).[3]

During 1973 and 1974, petitioners entertained guests aboard the boat. Lillian kept a contemporaneous list of the names of the people who were on the boat when it was taken out of the marina during 1973 and 1974. The list shows 20 dates for 1973, 21 dates for 1974, and names of people next to the dates. Except for two 1973 notes, the list does not indicate whether any of these people had any business relationship with petitioners. The list does not indicate the nature of any business uses of the boat.

---

[3]None of the expenses connected with the Jezebel II are in issue in the instant case. The uses, expenses, depreciation, and investment credit discussed herein all relate to the Jezebel III.

On some days during 1973 and 1974, the boat was used to entertain petitioners' personal guests while the boat remained docked. The list does not show the dates or number of these uses of the boat.

Petitioners also used the boat to conduct U.S. Coast Guard Auxiliary patrolling. Both petitioners are members of the U.S. Coast Guard Auxiliary (hereinafter sometimes referred to as the Auxiliary). They have been members since the early 1960's. Before the years in issue, Eli had been a commander of the Auxiliary. As members of the Auxiliary, petitioners taught safety, patrolled certain deep water areas to keep boats out of trouble, and aided boats that were in trouble. Petitioners were not paid for their services as members of the Auxiliary; they were reimbursed for their fuel costs. When petitioners used the boat to perform these patrols, they wore uniforms. Under the Auxiliary's rules, the only people allowed on the boat while it was used for patrol were members of the Auxiliary. For this size boat, a captain and a three-person crew (all of whom had to be members of the Auxiliary) were required for each patrol.

Table 1 shows the uses to which the boat was put on those dates that are shown on the list kept by Lillian.

Table 1

| Type of use | Number of days | |
| --- | --- | --- |
| | 1973 | 1974 |
| Related to business or investment | 3 | 5 |
| Auxiliary | [1]3 | 5 |
| Nonauxiliary personal | 7 | 4 |
| Repairs or maintenance | 7 | 7 |

[1]The parties have stipulated to 4 days of patrolling for the Auxiliary in 1973. However one of those days, Jan. 7, involved the Jezebel II, and not the boat. See note 3 *supra.*

The repairs or maintenance uses of the boat benefited all the other uses of the boat.

OPINION

Respondent argues that petitioners are not entitled to claim business expense and depreciation deductions, as well as an investment credit, with respect to the boat for the following

reasons:[4] (1) The expenses and depreciation do not "meet the standard of section 162(a)", that is, they are not ordinary and necessary business expenses; and (2) petitioners have not satisfied the requirements of section 274—specifically, the boat was not used primarily for business purposes, any business use was not "directly related" to Eli's practice of medicine, and petitioners failed to keep adequate records as required by section 274(d).

Petitioners contend that they are entitled to "a percentage of the facility [i.e., the boat] as a tax deduction" because the boat was used primarily for business.

We agree with respondent that the boat was not used primarily for business purposes, and so we do not deal with respondent's other contentions.[5]

Deductions are allowable for a taxpayer's ordinary and necessary expenses in carrying on a trade or business (sec. 162(a)[6]), and for depreciation of property used in a trade or business (sec. 167(a)(1)[7]). Also, an investment credit is allowable with respect to tangible personal property, but only if depreciation is allowable with respect to that property (sec. 48(a)(1)(A)[8]).

---

[4]Respondent does not dispute the correctness of petitioners' claims as to (1) the amounts of the expenses petitioners incurred, (2) the basis, useful life, and method of depreciation, and (3) the computation of the investment credit.

[5]The parties agree that petitioners are entitled to (1) business expense deductions of one-third of their claimed boat business expense deductions for 1973 and 30 percent for 1974, and (2) charitable contribution deductions of 29 percent of their claimed boat business expense deductions for 1973 and 35 percent for 1974.

They do not enlighten us as to why any part of petitioners' claimed boat business expense deductions are allowable as business expenses if we agree with respondent's contentions as to sec. 162 or 274. Similarly, they fail to enlighten us as to how the charitable contribution deduction amounts have been calculated.

We do not speculate as to the basis for these agreements (but see note 13 *infra*) and, as to these matters, we leave the parties as we find them.

[6]SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

[7]SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business * * *

[8]Sec. 48(a)(1) provides in pertinent part as follows:

SEC. 48. DEFINITIONS; SPECIAL RULES.

(a) SECTION 38 PROPERTY.—

(1) IN GENERAL.—Except as provided in this subsection, the term "section 38 property" means—

(A) tangible personal property, * * *

Business expense deductions and the investment credit with respect to a facility used in connection with an entertainment activity, even though otherwise allowable under sections 162(a), 167, and 38, are to be disallowed unless certain requirements set forth in section 274 are met. E.g., *Dowell v. United States*, 522 F.2d 708, 710–711 (5th Cir. 1975); *Andress v. Commissioner*, 51 T.C. 863, 866–867 (1969), affd. 423 F.2d 679 (5th Cir. 1970); sec. 274(g); sec. 1.48–1(b)(2), Income Tax Regs.

Under section 274(a),[9] the taxpayer must establish that (1) the facility was "used primarily for the furtherance of the taxpayer's trade or business", and (2) the expense item was directly related to the active conduct of such trade or business.[10] Sec. 274(a)(1)(B). Where the facility involved is a pleasure boat, as in the instant case (*Nicholls, North, Buse Co. v. Commissioner*, 56 T.C. 1225 (1971); *Ashby v. Commissioner*, 50 T.C. 409 (1968)), "The active conduct of trade or business is considered not to be the principal character or aspect of combined business and entertainment activity * * * on yachts

---

*      *      *      *      *      *      *

Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 3 years or more.

[9]SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES.

(a) ENTERTAINMENT, AMUSEMENT, OR RECREATION.—

(1) IN GENERAL.—No deduction otherwise allowable under this chapter shall be allowed for any item—

(A) ACTIVITY.—With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or

(B) FACILITY.—With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business,

and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business.

Sec. 274(a) was amended in 1978 by sec. 361 of the Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2763, 2847. This amendment eliminated the deduction for all facilities, except for clubs that met the "primary use" requirement. This amendment was effective for items paid or incurred after Dec. 31, 1978, and so does not apply to the instant case. Also see sec. 103(a)(10) of the Technical Corrections Act of 1979, Pub. L. 96–222, 94 Stat. 194, 212.

[10]Sec. 274(a)(2)(B) provides that "For purposes of applying paragraph (1) * * * An activity described in section 212 shall be treated as a trade or business." Accordingly, references to Eli's trade or business generally are intended to include Eli's investment activities. See table 1 *supra*.

\* \* \* unless the taxpayer clearly establishes to the contrary."
Sec. 1.274–2(c)(3)(iii), Income Tax Regs. Under section
1.274–2(e)(4)(i), Income Tax Regs., "All of the facts and circum-
stances of each case shall be considered in determining the
primary use of a facility." The comparison is to be between
"use for business" and "use for other purposes". Section
1.274–2(e)(4)(iii), Income Tax Regs.,[11] provides a "safe harbor";
a taxpayer is to be treated as satisfying the "used primarily"
requirement if the taxpayer shows that more than half of the
total calendar days of the facility's use were days of business
use.

Petitioners contend that, in applying this "safe harbor" test
to the instant case, we should not take into account days of use
of the boat for charitable purposes or for repairs or mainte-
nance. Respondent contends that we should take into account
both categories of uses and that both categories should be
treated as nonbusiness uses. In addition, the parties disagree
as to the number of days of business use.

We agree with respondent as to charitable uses and we agree
(in effect) with petitioners as to repair or maintenance uses.
We agree with respondent that, as to each of the years in issue,
the calendar days of business use are not more than half of the
total calendar days of use to be taken into account.

---

[11]Sec. 1.274–2(e)(4). *Determination of primary use—* \* \* \*

(iii) *Entertainment facilities in general.* A taxpayer shall be deemed to have established that—

(a) A facility used in connection with entertainment, such as a yacht or other pleasure boat,
hunting lodge, fishing camp, summer home or vacation cottage, hotel suite, country club, golf club
or similar social, athletic, or sporting club or organization, bowling alley, tennis court, or
swimming pool, or,

(b) A facility for employees not falling within the scope of section 274(e)(2) or (5)

was used primarily for the furtherance of his trade or business if he establishes that more than 50
percent of the total calendar days of use of the facility by, or under authority of, the taxpayer
during the taxable year were days of business use. Any use of a facility (of a type described in this
subdivision) during one calendar day shall be considered to constitute a "day of business use" if the
primary use of the facility on such day was ordinary and necessary within the meaning of section
162 or 212 and the regulations thereunder. For the purposes of this subdivision, a facility shall be
deemed to have been primarily used for such purposes on any one calendar day if the facility was
used for the conduct of a substantial and bona fide business discussion (as defined in paragraph
(d)(3)(i) of this section) notwithstanding that the facility may also have been used on the same day
for personal or family use by the taxpayer or any member of the taxpayer's family not involving
entertainment of others by, or under the authority of, the taxpayer.

## Charitable Uses

The test articulated in section 274(a)(1)(B) is that the facility (i.e., the boat) must be "used primarily for the furtherance of the taxpayer's trade or business." The statute does not, on its face, explain how to measure the use of the facility in determining whether its business use was the primary use.

The regulations under section 274 are "legislative regulations"—i.e., Congress provided, in the statute, that the Secretary of the Treasury or his delegate (i.e., respondent) "shall prescribe such regulations as he may deem necessary to carry out the purposes of [the] section." Sec. 274(h).[12] As such, these regulations are not to be invalidated unless they are clearly contrary to the will of the Congress. *Sanford v. Commissioner,* 50 T.C. 823, 832 (1968), affd. 412 F.2d 201 (2d Cir. 1969).

The regulations compare business use with nonbusiness use. Petitioners do not contend that their uses of the boat for the Auxiliary are business uses. Cf. *Marquis v. Commissioner,* 49 T.C. 695 (1968).

Charitable[13] uses are personal uses. The mere fact that they are deductible does not detract from their essentially personal nature. See sec. 262[14] and sec. 1.262–1(c), Income Tax Regs.[15] See also H. Rept. 94–658, at 163 (1975), 1976–3 C.B. (Vol. 2) 695, 855; S. Rept. 94–938, at 151 (1976), 1976–3 C.B. (Vol. 3) 49, 189 ("Deductions that are expressly allowable, *even though*

---

[12]The subsequent redesignation of sec. 274(h) as 274(i), by sec. 602(a) of the Tax Reform Act of 1976 (Pub. L. 94–455, 90 Stat. 1520, 1572), does not affect the instant case.

[13]The parties evidently assume that petitioners' use of the boat for the purposes of the Auxiliary are charitable uses; we will so treat these uses, although the parties have not stipulated to this point. See note 5 *supra.*

[14]SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

[15]Sec. 1.262–1. Personal, living, and family expenses.

(c) *Cross references.* Certain items of a personal, living, or family nature are deductible to the extent expressly provided under the following sections, and the regulations under those sections:

(1) Section 163 (interest).

(2) Section 164 (taxes).

(3) Section 165 (losses).

(4) Section 166 (bad debts).

(5) Section 170 (charitable, etc., contributions and gifts).

(6) Section 213 (medical, dental, etc., expenses).

(7) Section 214 (expenses for care of certain dependents).

(8) Section 215 (alimony, etc., payments).

(9) Section 216 (amounts representing taxes and interest paid to cooperative housing corporation).

(10) Section 217 (moving expenses).

*they are attributable to personal use*, include items of interest, certain taxes, and casualty losses." Emphasis added.). Petitioners have not brought to our attention, and we have not found, anything in the statute or the legislative history indicating that charitable uses are to be treated differently from other personal uses for purposes of applying the facilities rules of section 274(a). Personal uses are included in the nonbusiness use category. E.g., secs. 1.274–2(e)(4)(i), 1.274–2(e)(4)(iii), 1.274–7, Income Tax Regs. This categorization is consistent with the committee reports on the Revenue Act of 1962 (Pub. L. 87–834, 76 Stat. 960, 974), which enacted section 274. S. Rept. 87–1881, at 31–32 (1962), 1962–3 C.B. 703, 737–738; see H. Rept. 87–1447, at 22 (1962), 1962–3 C.B. 402, 426.

Accordingly, we conclude that petitioners' uses of the boat for purposes of the Auxiliary are to be taken into account as nonbusiness uses in determining whether the boat was used primarily for the furtherance of Eli's trade or business.

Petitioners argue that, if we were to take into account their uses of the boat for the Auxiliary, then we "would punish a taxpayer for his philanthropic attitude on the boat usage." We must acknowledge that, in marginal cases, a reduction in the number of days of charitable use might result in allowing a business expense deduction that otherwise would be disallowed under section 274. In some instances the amount of this business expense deduction may exceed the amount of the foregone charitable contribution deduction. We may speculate that this complex interaction of the charitable contribution deduction and business expense deduction might have contributed to the congressional conclusion in 1978 that section 274(a) should be revised because "The complexity of the provisions of present law make * * * effective administration and uniform application extremely difficult". S. Rept. 95–1263, at 174 (1978); Staff of Joint Comm. on Taxation, 95th Cong., 2d Sess., General Explanation of the Revenue Act of 1978, at 206 (Comm. Print 1979). See note 9 *supra*. Other provisions of the Internal Revenue Code occasionally have the effect of reducing the basic tax incentives for making charitable contributions. For example, under the Tax Reform Act of 1976, the base for a taxpayer's minimum tax might be increased if the taxpayer

had large charitable contribution deductions.[16] This prospect was not done away with by the Congress until the Tax Expenditure and Fiscal Responsibility Act of 1982. We acknowledge the validity of petitioners' contention on this point but the broad language of the "legislative" regulations under section 274 is consistent with the statute and the legislative history of section 274. Petitioners' argument has to be made in a different forum.

Petitioners' calendar days of use of the boat for the Auxiliary are included in the total calendar days of use of the boat in applying the "used primarily" test of section 274(a), as detailed in section 1.274–2(e)(4)(iii), Income Tax Regs. These days are included in the number of calendar days of nonbusiness use for purposes of this test.[17]

### Repair or Maintenance Uses

In addition to the statutory and regulatory language and legislative history referred to *supra*, the committee reports specifically state that "expenditures for the maintenance, preservation, or protection of the facility" are included in the expenses "with respect to a facility" (within the meaning of section 274(a)(1)(B)) that are to be apportioned (or disallowed in entirety) under section 274(a)(1). H. Rept. 87–1447, at 21–22, *supra*, 1962–3 C.B. at 425–426; S. Rept. 87–1881, at 31, *supra*, 1962–3 C.B. at 737. Such expenses, then, may ultimately be attributable to business uses or to personal or other nonbusiness uses; this attribution apparently was contemplated by the Congress to be based on the latter uses rather than on any particular attribute of the maintenance, etc., expenses. We have found that the repair or maintenance uses of the boat benefited all the other uses of the boat. It appears to us that calendar days of use of the boat for repair or maintenance purposes ought to be treated under the statute (i.e., apportioned for purposes of the "used primarily" test) in the same manner as the expenses that have been made for these purposes.

---

[16]See Weithorn, "Prospective Impact of Noncharitable Provisions of the 1976 Tax Reform Act on Incentives for Charitable Giving", 55 Taxes 243, 246–247 (1977).

[17]For a recent analysis of a similar problem under sec. 280A, see *Baker v. Commissioner*, T.C. Memo. 1983–61.

Since calendar days of the repair or maintenance use are to be included in the total calendar days of use, if these days were not otherwise taken into account, then these uses would, in effect, be treated in entirety as being attributable to personal or other nonbusiness use. This result appears to be inconsistent with what the Congress contemplated and is not clearly required by the language of the statute. Similarly, it is neither appropriate nor clearly required by the language of the statute or the regulations that these uses be treated in entirety as being attributable to business use.

We conclude that the apportionment contemplated by the statute may be achieved by allocating the calendar days of repair or maintenance use between the business and the nonbusiness categories in the same proportion as the otherwise-determined calendar days of business use and nonbusiness use, in determining whether the boat was used primarily for the furtherance of Eli's trade or business.

### Comparison of Uses

Petitioners maintain that they used the boat for business purposes seven times in 1973 and eight times in 1974. Respondent insists that "No business usage was established by the evidence."

We have found (table 1 *supra*) that, taking into account petitioners' investment activities (see note 10 *supra*), petitioners used the boat for business purposes on 3 calendar days in 1973 and 5 in 1974. Taking into account petitioners' use of the boat for the Auxiliary, petitioners used the boat for nonbusiness purposes when it was taken out of the marina on 10 calendar days in 1973 and 9 in 1974. In addition, the boat was used for some days in each of these years to entertain petitioners' personal guests while the boat remained docked, and this dockside use also is to be taken into account. *Nicholls, North, Buse Co. v. Commissioner*, 56 T.C. at 1237–1238.

From the foregoing we conclude that, for each of the years in issue, less than 50 percent of the total calendar days of use of the boat was days of business use and so petitioners fail the "safe harbor" test of section 1.274–2(e)(4)(iii), Income Tax Regs. Apportionment of the calendar days of repair or maintenance use does not change the ratio of business use to nonbusiness use. The nonbusiness use is greater than the business use.

Petitioners have failed to show that they satisfied the "used primarily" requirements under the general rule of section 1.274–2(e)(4)(i), Income Tax Regs. Accordingly, we conclude that section 274(a)(1)(B) prohibits petitioners' claimed deductions under sections 162(a) and 167 for each of the years in issue, and, as a result, prohibits petitioners' claimed investment credit for the boat for 1973.

Petitioners do not contend that any deduction or credit escapes the section 274(a) disallowance because of the provisions of section 274(e)(5), and so we do not examine into the application of the latter section.

We hold for respondent.

*Decision will be entered for the respondent.*