GEORGE DETKO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Detko v. Commissioner
Docket No. 14790-81.
United States Tax Court
T.C. Memo 1987-99; 1987 Tax Ct. Memo LEXIS 95; 53 T.C.M. (CCH) 186; T.C.M. (RIA) 87099; February 18, 1987. *95 Held: Petitioner established that the use of his fishing boat was primarily for business purposes. Held further, petitioner is entitled to a deduction for certain expenses incurred in connection with the use of the boat and to depreciation deduction and investment tax credit. Stephen G. Salley, for the petitioner. Jane T. Dickinson, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency for petitioner's taxable year ended 1977 in the amount of $12,677.50. After concessions, the issues for decision are whether petitioner is entitled to deduct certain depreciation and other expenses in connection with the operation of a 31-foot Bertram Flybridge Cruiser (the boat), and whether petitioner is entitled to claim an investment tax credit with respect to the boat. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, George Detko, is a medical doctor specializing in anesthesiology. At the time he filed his petition, Dr. Detko resided in Vero Beach, Florida. He had been practicing in Vero Beach since 1975, after completing his medical degree at the University of Alabama, and a residency *96 program at the University of California at San Francisco. When Dr. Detko first arrived in Vero Beach, he practiced as a salaried employee with the anesthesiological group Punches, Molina, Jaffe and Rossway, M.D., P.A. (Punches, P.A.). At that time, Punches, P.A. employed six anesthesiologists and offered the only anesthesiological services in Vero Beach and the surrounding area. The arrangement did not prove to be satisfactory for Dr. Detko, however, and he terminated his relationship with the group in December 1976. Dr. Detko wanted to remain in Vero Beach, so he began his own practice in January 1977. Because anesthesiologists work strictly on a referral basis, his success was dependent upon the number of patient referrals he received from other physicians in the Vero Beach medical community. His bid for referrals was necessarily in direct competition with his former employer. While he and members of the Punches, P.A. group all had reputations as competent anesthesiologists, the group had been in the community for a longer period, and because of its size was able to offer greater availability of services. As a sole practitioner Dr. Detko found it difficult to break into the *97 community. Initially, he solicited referrals by putting an announcement in the newspaper. Recognizing that he would need to increase the number of referrals he was receiving, Dr. Detko decided to find a way to spend more time directly with other doctors in the community who were potential referral sources. He evaluated the usual methods of contacting those doctors such as entertaining at parties or golfing, but he eliminated those as choices because he did not have a home suitable for entertaining, and was not a member of any country club or similar facility. Instead, Dr. Detko decided to purchase a fishing boat. He wanted to capitalize on the interest of some doctors and at the same time create a situation where he would have the doctors' attention so he could establish a rapport with them. In mid-August 1977, he purchased a 31-foot Bertram Flybridge Cruiser. The boat afforded Dr. Detko the opportunity and time to discuss candidly medical affairs with area doctors. He took the boat out on 13 occasions between the time of purchase and the end of 1977. Each time the boat was used, he recorded an entry in a log reflecting the date, ports, times of departure and arrival, guests, [1] *98 and a brief description of the fishing results. Of the 13 days logged, 4 involved travel to or from marinas for delivery or maintenance purposes, and the remaining 9 involved fishing trips with doctors aboard the boat. Dr. Detko did not take the boat out without making an entry in the log, and did not use the boat at dockside. The following summary extracts the relevant information from Dr. Detko's log: Date
Guest
Remarks
8/14/77
None
Boat delivered to
home port
8/15/77
Dr. Stubbs
8/16/77
Dr. Ward
Trip aborted due to
rough seas
8/26/77
Dr. Sakalas
Blew port engine
8/27/77
None
Delivered boat for
repair of port engine
11/05/77
None
Delivered boat to home
port after warranty
repair
11/06/77
Dr. Sakalas
11/17/77
Dr. Greenfield
11/19/77
Dr. Hooshmond
11/29/77
None
Maintenance trip
12/17/77
Dr. Gardner
Dr. Stubbs
12/18/77
Dr. Sakalas
12/21/77
Dr. Duvall
Trip aborted due to
Dr. Stubbs
rough seas
Of the physicians entertained, Drs. Ward, Stubbs, and Sakalas were surgeons, typically a referral source for anesthesiologists. *99 Drs. Ward and Stubbs referred patients to Dr. Detko both before and after being entertained on his boat. Dr. Sakalas, a neurosurgeon new to the Vero Beach area, was actually recruited to practice in Vero Beach by Dr. Hooshmond, and was entertained on the boat during the time he was considering the move to Vero Beach. He regularly referred patients to Dr. Detko after meeting him and going out on the boat. Dr. Hooshmond, a neurologist, also regularly referred patients to Dr. Detko through Dr. Sakalas. Dr. Duvall, a specialist in internal medicine and nephrology, did not refer patients directly because he did not perform surgery. As a diagnostic radiologist, Dr. Greenfield was a less frequent referral source. [2] *100 Dr. Gardner, an anesthesiologist, was not a referral source. He was invited because he was an anesthesiologist who had set up a private practice in another county. He had worked for the Punches, P.A. group prior to establishing his practice in Martin County. He and Dr. Detko discussed the problems each faced with their practices. Thus, with the exception of Dr. Gardner, each of the doctors entertained during 1977 was a potential or actual referral source for Dr. Detko. For the taxable year ended 1977, Dr. Detko deducted $5,554 [3] for depreciation and $3,588 [4] as professional entertainment expenses incurred in connection with the boat. In addition, he claimed an investment tax credit of $7,107. In the notice of deficiency dated March 24, 1981, respondent disallowed Dr. Detko's claimed deductions for depreciation and entertainment expenses on the grounds that the amounts were not shown to be ordinary and necessary business expenses and did not otherwise meet the requirements of section 274. [5] *101 In addition, because it was not established that the boat was qualified property, respondent disallowed the investment tax credit claimed. OPINION Generally, deductions are allowable for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, and for depreciation of property used in a trade or business. Secs. 162(a), 167. In addition, an investment tax credit is allowable with respect to certain depreciable personal property. Sec. 48(a)(1)(A). In the instant case, Dr. Detko has established that the use of the fishing boat was primarily for business reasons. Commissioner v. Heininger,320 U.S. 467 (1943); Schulz v. Commissioner,16 T.C. 401 (1951). [6] We are convinced that the fishing trips he arranged with various doctors in the Vero Beach community afforded him the opportunity to establish or maintain relationships that resulted in the referral of patients to him. [7] *102 The boat provided a private setting where the doctors could candidly discuss their needs and the referral problems in the Vero Beach medical community. Through discussions with the doctors, Dr. Detko was able to gain or maintain their confidence in his ability to provide the services they needed. Thus Dr. Detko has satisfactorily established a business connection between the fishing trips and his medical practice. Commissioner v. Heininger,supra;Schulz v. Commissioner,supra;Harris v. Commissioner,T.C. Memo. 1975-276; Cf. Larrabee v. Commissioner,33 T.C. 838 (1960). However, we find that only certain of the expenses Dr. Detko claims to have incurred in connection with the use of the boat are "allowable" under section 162. [8] On his 1977 income tax return, Dr. Detko claimed $3,588 as professional entertainment expenses. *103 In support of those deductions, Dr. Detko entered as an exhibit a copy of an itemized list of "Boat Expenses" which had been attached to his 1977 return. At trial he did not explain or further substantiate the items on the list. Except for those items which are self-explanatory in nature, we find that Dr. Detko has not sufficiently proven that each expense was incurred in connection with the use of the boat. We therefore find that the expenses "allowable" under section 162 amount to $3,401.53. [9]
In addition, since the use of the boat was sufficiently connected to Dr. Detko's business, the depreciation deduction and investment tax credit are "allowable" with respect to the boat under sections 167 and 38. [10]
Otherwise allowable business expense deductions, depreciation, and the investment tax credit are not allowed with *104 respect to a facility used in connection with an entertainment activity [11] *105 unless the additional requirements of section 274 have been satisfied. [12]Davidson v. Commissioner,82 T.C. 434, 438 (1984); secs. 1.274-1, 1.274-2(e)(3)(i), 1.48-1(b)(2), Income Tax Regs. Section 274 was added to the Code to limit abuses in the area of deductions for entertainment or entertainment facilities. See Nicholls, North, Buse Company v. Commissioner,56 T.C. 1225, 1233 (1971). Section 274(a) provides in part with respect to expenditures paid or incurred before January 1, 1979, that no deduction otherwise allowable shall be allowed with respect to an entertainment facility unless the facility was used primarily for the furtherance of the taxpayer's trade or business and the expenditure was directly related to the active conduct of such trade or business. Sec. 274(a)(1)(B); sec. 1.274-2(a)(2)(ii), Income Tax Regs.[13] Furthermore, an otherwise deductible entertainment expenditure is not deductible unless the taxpayer meets the substantiation requirements of section 274(d). Respondent's regulations provide in part that a facility used in connection with entertainment shall be considered as used primarily for the furtherance of a taxpayer's trade or business only if it is established that the primary use of the facility during the taxable year was for purposes considered ordinary and necessary within the meaning of section 162. *106 Sec. 1.274-2(e)(4)(i), Income Tax Regs.[14] Considering all of the evidence, and incorporating our earlier discussion of the business use of the boat for purposes of section 162, we conclude that Dr. Detko has satisfied this requirement. [15]
*107 Furthermore, we find that the expenses, depreciation and investment tax credit claimed by Dr. Detko were directly related to the active conduct of his trade or business. Respondent's regulations set forth four requirements which must be satisfied for such items such as those involved here to be considered "directly related." [16] *109 *110 Dr. Detko has satisfied each requirement. We are convinced he was not simply trying to develop goodwill, as respondent suggests. Dr. Detko needed to find a way to talk to the doctors privately about the competitive situation he faced in Vero Beach. He anticipated referrals from those doctors he took out on the boat, and in fact did receive or continued to receive referrals from those doctors after actively engaging in discussions with them about medical affairs in the Vero Beach community. In light of all the facts and circumstances, Dr. Detko has clearly established that the principal character or aspect of the fishing trips was to establish or maintain relationships with doctors who referred patients to him. [17]Sec. 1.274-2(c)(3)(i)-(iii), Income Tax Regs. Dr. Detko has also established that all of his expenditures were allocable to himself and to the *108 doctors entertained. [18]Sec. 1.274-2(c)(3)(iv), Income Tax Regs.
With respect to the substantiation requirements of section 274(d), Dr. Detko must prove with adequate records or by sufficient evidence corroborating his own statement, the amount of the expense or other item claimed, the time and place of the use of the boat, the business purpose of the expense or item, and the business relationship to him of persons entertained or using the facility. [19] *111 Ashby v. Commissioner,50 T.C. 409, 414 (1968). [20] With respect to the depreciation deduction and investment tax credit, Dr. Detko has satisfied each of these requirements. [21] He has also satisfied the requirements of section 274(d) for the professional entertainment expenses, which we determined was allowable under section 162[22] in the amount of $3,401.53. [23] *112 Decision will be entered under Rule 155.
APPENDIX A Dockage &
Misc.
Bait &
Date
Payee
Gas
Insurance
Supplies
Tackle
8-14-77
Bahia Marina
$ 97.37
8-15-77
F.P. City Marina
68.34
20.60
8-26-77
F.P. City Marina
59.98
12.39
10-16-77
Chevron * 135.64
11-5-77
F.P. City Marina
65.86
11-6-77
F.P. City Marina
54.67
11-19-77
F.P. City Marina
71.72
7-30-77
F.P. City Marina
44.72
8-22-77
Bahia Mar Yachting
Center
8.06
8-11-77
Richard Burton Agency
1,262.00
8-22-77
Richard Burton Agency
115.00
9-4-77
F.P. City Marina
178.88
7-16-77
Hildebrand Marine
18.98
8-13-77
Bahia Marina
57.86
8-16-77
McClure Drugs * 8.37
8-25-77
Winn Dixie * 39.33
9-17-77
Vero Marina Center
1.56
10-8-77
Vero Marina Center
38.48
10-24-77
Radio Tech Commission
3.00
11-5-77
Treasure Coast YCEE * 15.00
10-29-77
Hildebrand Marine
17.37
9-6-77
Lees Tackle
228.80
11-25-77
Eagles * 33.11
12-3-77
Carl's Tackle
24.36
12-77
Sears * 69.66
12-77
Sears * 39.82
12-77
Sears * 52.82
12-3-77
Fort Pierce Automotive * 22.38
8-4-77
Amer. Express * 29.27
8-15-77
Jacks
27.50
8-16-77
White's Tackle Shop
18.28
8-16-77
Vero Marine Center
54.92
8-16-77
Vero Marine Center
7.28
8-13-77
Beach Bait and Tackle
220.32
8-22-77
Beach Bait and Tackle
94.64
8-25-77
Modern Marine
10.49
8-26-77
White's Tackle
13.46
9-1-77
Carl's Tackle
49.87
9-3-77
North Beach Fish Camp
2.50
9-28-77
Carl's Tackle
34.00
10-3-77
Carl's Tackle
18.36
10-8-77
Carl's Tackle
24.46
10-29-77
Fishing Stuff * 60.99
11-4-77
Modern Marine
5.71
11-4-77
Baywood
6.35
11-4-77
White's Tackle Shop
3.55
11-20-77
Beach Bait & Tackle
74.85
11-25-77
Beach Bait & Tackle
74.87
11-8-77
Modern Marine
9.36
11-30-77
Modern Marine
7.97
12-8-77
Taylor Creek * 5.24
12-8-77
Jacks * 9.36
12-15-77
F.P. City Marina
4.55
12-1-77
Carl's Tackle
39.18
12-17-77
Jacks * 5.20
12-18-77
Seaway Tackle & Marine
7.73
12-20-77
Carl's Tackle
29.11
12-21-77
White's Tackle Shop
7.36
12-2-77
White's Tackle
11.34
10-16-77
Marine Telephone
11.30
12-8-77
Delto Supply * 15.83
12-21-77
F.P. City Marina
81.39
12-22-77
Modern Marine
33.68
12-27-77
M & M * 6.23
12-27-77
M & M * 23.71
Total amount shown on exhibit
634.97
1,608.66
778.81
983.90 * Amount not self-explanatory
134.64
310.43
159.74
Amount allowable
$500.33
$1,608.66
$468.38
$824.16
TOTALS
Amount shown on exhibit
$4,006.34 * Amount not self-explanatory  604.81
Amount allowable
$3,401.53
*113 Footnotes
1. Dr. Detko did not list family members of the doctors. In addition, he did not list Mrs. Detko, who accompanied him on each trip to help run the boat. (Dr. and Mrs. Detko were married subsequent to the year in issue.)↩
2. Dr. Greenfield was asked to go fishing once after Dr. Sakalas had cancelled.
3. The parties have stipulated that the salvage value of the boat should have been reported as $30,000. Therefore, a holding for petitioner will necessitate a Rule 155 computation to calculate the proper amount of depreciation. ↩
4. Dr. Detko claimed $3,588 in professional entertainment expenses on his 1977 return, yet the exhibit he provided to support the deductions lists a total of $4,006.34. We have no explanation for the discrepancy in amounts. ↩
5. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.
6. Harris v. Commissioner,T.C. Memo. 1975-276↩. 7. We do not, as respondent suggests, attach significance to the fact that some of the doctors entertained were already referring patients to Dr. Detko before he bought the boat. In a competitive market such as that faced by Dr. Detko, the maintenance of positive relationships with doctors who were referring patients already was as important as gaining the confidence of doctors who had no prior history of referrals. See Harris v. Commissioner,supra,↩ where we held that yacht-related expenditures incurred by a doctor-taxpayer with an established practice were deductible as ordinary and necessary business expenses.
8. On brief respondent argued that these claimed expenses were not substantiated under sec. 274(d). However, before we reach sec. 274, the expenses must be "allowable" under sec. 162. Sec. 1.274-1, Income Tax Regs.↩
9. See Appendix A.↩
10. The parties do not raise any other issues with respect to the depreciation deduction and the investment tax credit under these sections.↩
11. The parties do not dispute that Dr. Detko's boat is a facility used in connection with an entertainment activity. An entertainment facility includes any item of personal property used for, or in connection with entertainment. "'Entertainment' means any activity which is of a type generally considered to constitute entertainment, amusement, or recreation, such as * * * fishing * * *." Sec. 1.274-2(b)(1)(i), Income Tax Regs.↩
12. In addition, taxes and interest are deductible without regard to whether they are connected to a taxpayer's trade or business. Sec. 274(f); sec. 1.274-2(e)(3)(iii)(c), Income Tax Regs.↩
13. Sec. 274(a)↩ was amended in 1978 by sec. 361 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2847. This amendment eliminated the deduction for all facilities, except for clubs that met the "primary use" requirement. The amendment was effective for items paid or incurred after December 31, 1978, and therefore does not apply to the instant case.
14. Sec. 1.274-2(e)(4)(i), Income Tax Regs.↩, also provides in part that all of the facts and circumstances of each case shall be considered in determining the primary use of a facility and that it is the actual use of the facility which establishes the deductibility of expenditures with respect to the facility; not its availability for use and not the taxpayer's principal purpose in acquiring the facility. 15. The boat was used for business purposes 100 percent of the time in 1977. Each day a doctor was taken aboard for a fishing trip was a "day of business use," since the primary use of the facility on such day was ordinary and necessary within the meaning of sec. 162. Sec. 1.274-2(e)(4)(iii), Income Tax Regs. Furthermore, since the maintenance and travel days are allocable proportionately to business and personal use, we conclude that those days are allocable 100 percent to business use. Davidson v. Commissioner,82 T.C. 434 (1984); Wott v. Commissioner,T.C. Memo. 1986-319↩.
16. Sec. 1.274-2(c)(3), Income Tax Regs., provides: (i) At the time the taxpayer made the entertainment expenditure (or committed himself to make the expenditure), the taxpayer had more than a general expectation of deriving some income or other specific trade or business benefit (other than the goodwill of the person or persons entertained) at some indefinite future time from the making of the expenditure. A taxpayer, however, shall not be required to show that income or other business benefit actually resulted from each and every expenditure for which a deduction is claimed. (ii) During the entertainment period to which the expenditure related, the taxpayer actively engaged in a business meeting, negotiation, discussion, or other bona fide business transaction, other than entertainment, for the purpose of obtaining such income or other specific trade or business benefit (or, at the time the taxpayer made the expenditure or committed himself to the expenditure, it was reasonable for the taxpayer to expect that he would have done so, although such was not the case solely for reasons beyond the taxpayer's control). (iii) In light of all the facts and circumstances of the case, the principal character or aspect of the combined business and entertainment to which the expenditure related was the active conduct of the taxpayer's trade or business (or at the time the taxpayer made the expenditure or committed himself to the expenditure, it was reasonable for the taxpayer to expect that the active conduct of trade or business would have been the principal character or aspect of the entertainment, although such was not the case solely for reasons beyond the taxpayer's control). It is not necessary that more time be devoted to business than to entertainment to meet this requirement. The active conduct of trade or business is considered not to be the principal character or aspect of combined business and entertainment activity on hunting or fishing trips or on yachts and other pleasure boats unless the taxpayer clearly establishes to the contrary. (iv) The expenditure was allocable to the taxpayer and a person or persons with whom the taxpayer engaged in the active conduct of trade or business during the entertainment or with whom the taxpayer establishes he would have engaged in such active conduct of trade or business if it were not for circumstances beyond the taxpayer's control. * * * 17. Respondent also argues that the entertainment occurred under circumstances where distractions were substantial. See sec. 1.274-2(c)(7), Income Tax Regs.↩ This assertion is contrary to direct testimony from the doctors involved that they found ample time to discuss medical affairs while aboard the boat. 18. While Mrs. Detko was aboard on each of the trips, we are satisfied that the expenditures attributable to her are de minimis since she merely helped operate the boat. On those occasions where a doctor's family member was on board, the additional expenses are de minimis as well. See Harris v. Commissioner,T.C. Memo. 1975-276↩.
19. Respondent's regulations provide that an expense is substantiated by "adequate records" if the taxpayer maintained an account book, diary, statement of expense or similar record, and documentary evidence which, in combination, are sufficient to establish the items set forth above. Sec. 1.274-5(c)(2)(i), Income Tax Regs. If a taxpayer fails to meet the adequate records requirement, he may establish an element by his own statement, whether written or oral, containing specific information in detail as to such element and by other corroborative evidence sufficient to establish such element. Sec. 1.274-5(c)(3), Income Tax Regs.↩
20. See also Harris v. Commissioner,supra.↩
21. We note that the amount of depreciation will need to be calculated under Rule 155 subject to the stipulated $30,000 salvage value of the boat. ↩
22. See Appendix A. ↩
23. Respondent argued that the expenses were not broken down to reflect costs per trip, and that therefore Dr. Detko fails sec. 274(d). We disagree. Where, as in circumstances here, the business use was 100 percent and the items were dated sequentially on the list of expenses, we deem the expenses for the year sufficiently substantiated. Compare Nicholls, North, Buse Company v. Commissioner,56 T.C. 1225, 1235↩ (1971).